Stanard, J.
The first question to be solved in this case is, does the record shew any valid claim in any one to subject the defendants, seven of the sureties of Isaac Heiskell in the bill discounted at bank, to contribution for the payment made (on the default of the principal) to take up that bill? This depends on the enquiry, whether the bill was taken up by a surety under circumstances to authorize the sureties against whom the claim of contribution is preferred, to make the payment subservient to their indemnity, in exoneration of the duty to contribute; or under circumstances to leave them subject to that duty. If the obligation of surety-ship, by virtue of which the payment was made, be not, in its substance and nature, that of one of several original sureties, then, according to the circumstances under which the obligation may have been incurred, the original sureties may be exempt from the duty of contribution altogether, and the new surety, on the other hand, be liable to indemnify them; or they may be bound to make full indemnity to such new surety paying the debt. Thus if the creditor, in the pursuit of his remedy against the principal debtor, obtains an additional security, as bail on the writ, or surety in the forthcoming or prison bounds bond, and such bail or surety pays the debt, he has no claim to contribution against the original sureties, and those sureties have the right, if they pay, to enforce his obligation for their indemnity. Examples of the application of this principle are furnished by the cases of Parsons v. Briddock, 2 Vern. 608. and Givens & al. v. Nelson’s ex’or & al. 10 Leigh 382. and many others that might be cited. If, on the contrary, the case be that of a creditor who, having the obligation *181 of the principal debtor and sureties, and desiring additional security, obtains the undertaking of a third party to pay the debt if the obligors do not, the discharge of the debt by this third party, under the obligation of this undertaking, entitles him to full indemnity from the sureties in the original obligation. If the suretyship be substantially and in its nature that of one of several original sureties, on the payment under its obligation, the duty of contribution attaches to the other sureties. Was the payment in this case made by a party whose obligation was of this nature }
Coupled with the facts agreed by the parties, the following are shewn by the record. Before the application of Heiskell to Zane, he and the seven sureties (defendants) had made their single bill payable to the Northwestern bank. This bill he proposed to discount at the bank, for which purpose it was necessary that he should have an “ endorser” (that is, a surety in the bill) living in Wheeling: and accordingly, under the arrangement made with Zane, Vause became a cosurety.
The rights and obligations of the parties depend on the facts so agreed and shewn. It is contended by the appellant that the just conclusion from them is, that Zane undertook to pay the money for Heiskell if he failed, that is, to assume the obligation of Heiskell on his failure, and by performing for him, to relieve and save harmless the surety Vause; and that such obligation, or at least the performance of it, enured to the benefit of all the sureties. It seems to me that this conclusion does not result from the facts, and is manifestly at war with any intention that can be rationally ascribed to Zane or Vause, the parties to the arrangement from which the conclusion is deduced. All that was asked of Zane was to become one of eight sureties. All that he was willing or intended to do was to incur such responsibility. This being most manifest, if not uncontested, the arrangement with Vause was but a substitu *182 lion of Vause’s responsibility for that which Zane was willing to incur, and as between Zane and Vause, made Zane liable for that suretyship which to the bank and the cosureties had been incurred by Vause. As between these parties, it was a suretyship of Zane in the name of Vause. The conclusion which converts the intended responsibility of Zane, from that of one of eight sureties, into one of indemnity to all the sureties for the whole debt, is drawn from a technical or rather a literal adherence to the terms in which the arrangement between Vause and Zane is slated in the agreed facts. That written statement should be expounded in reference to the ascertained intent and object of the parties to it, and the occasion that caused it. Vause had no possible motive to obtain from Zane an engagement that would enure to the indemnity of the other sureties, and Zane clearly did not intend to make such a one ; and a construction of the terms of the arrangement deducing an engagement which the one did not seek, and the other neither intended nor was even asked to incur, is, in my estimation, hostile to the clearest principles of justice and of law. For this construction there is no colour, unless the letter of that part of the agreed facts which professes to state the engagement of Zane to Vause, be insulated from the considerations that led to it, and then interpreted without regard to its object and the intent of the parties. The engagement so extracted from the statement of facts is the assurance of Zane to Vause, when he became endorser (or cosurety), “ that if Heiskell did not pay off the note when it arrived at maturity, he Zane would pay it off for him.” Detached from the circumstances which led to the assurance, and from the position of the parties, such an engagement might justly involve the responsibility which the argument of the appellant has ascribed to it. Had Vause been one of many sureties to an existing obligation of Heiskell, seeking indemnity from his principal, and had *183 HeisJcett given the indemnity, either by a lien on pro- . , i*. i perty, or in such an engagement oí a third person, the indemnity in either form, certainly in the first, might enure to the benefit of all the sureties. But such is not the case in question. Adhering to the letter of the extracted engagement, it is argued that Zane engaged to pay the note for Heiskdl. But how pay it ? as the substitute of Heiskdl? or in place of Vause? It is the one or the other, according to the intent and object of the parties Zane and Vause. Had Zane not procured Vause to be the surety, and made no engagement with him, then, on the default of Heiskdl, Vause would have been bound to pay the note; and if he paid it, he would pay for Heiskdl, and such payment would subject the other sureties to the duty of contribution. Vause was the surety substituted for Zane, with the engagement of Zane to discharge the obligation Vause had incurred at his instance. The stipulation to pay for Heiskdl cannot be interpreted so as to place Zane in the position of Heiskdl the principal, with his obligations. According to the just interpretation, Zane stipulated to pay for Heiskdl as Vause had bound himself to pay for Heiskdl, that is, as one of eight sureties ; and the payment made in pursuance of that engagement, by necessary intendment, would be in discharge of the obligation that Vatise had assumed for him. The payment was the fruit of the obligation of one of eight sureties (ail bound in the same obligation), and being made under an engagement which cast on the person making it the duty of one of eight sureties, has thereby imparted to it the quality of a payment by one surety in discharge of the obligation of all; and the duty of contribution from those who did not pay, is its legal and equitable offspring.
The seven sureties defendants, then, were liable to the claim for contribution for the payment made in discharge of the bill, and this suit was brought to enforce that liability. It was brought in the name of Vause, *184 and was resisted on the ground that the payment was not made by Vause. Subsequently, Zane was united in the suit as a coplaintiff; and having ascertained that the defendant sureties were liable to contribute, the difficulty in the way of a decree on that liability was removed, as it could certainly be enforced in the name of Vause or Zane.
But the material question in this case is, what is the effect of the Us pendens ? or rather, what is the time to which it ought to relate ? the liability of the land in the hands of the appellant as purchaser, depending on the date from which the lis pendens takes effect. If the suit can be supported in the name of Vause alone, then there was an effectual lis pendens before Stout purchased, and his title as purchaser is overreached. Zane became a coplaintiff long after the purchase of Stout: and if the claim to contribution could be asserted by and in the name of Zane only, then it is argued with great force, that the suit in the name of Vause was nugatory as a Us pendens, as no decree could be rendered in that suit.
.That a suit could not be sustained in the name of Vause for Vausds benefit, I have no doubt. The beneficial-interest in the claim for contribution was in Zane. It is only by regarding the suit in the name of Vause as one brought for Zand’s benefit, that title can be shewn to a decree in that suit. Could the suit be brought for Zane in the name of Vause, and was it so brought ? My first impression was very strong in favour of a negative answer to the first branch of this enquiry. The general rule of the court of equity requires the person having the beneficial interest to be a party, and, if the recovery of that interest be sought, a party plaintiff asserting that right, and asking a decree to enforce it: and unless he be such party, the rule forbids a decree in respect to such interest. There were views of this case presented in the conference with one of my brethren, and in the course of my own reflections on it, that weakened this *185 first impression, and furnished at least plausible reasons to extricate the case from the operation of the general rule. But the first impression has not been removed, and I conclude that Zane was a necessary party plaintiff; and if so, there was no lis pendens in respect to the only party interested in its operation, until he became a coplaintiff. I adopt this conclusion with the less hesitation in this case, because, had I reached a different one, a difficulty in sustaining the suit in the name of Vause would still be presented by the second branch of the enquiry, to wit, was the suit in the name of Vause so brought by Zane for his benefit? The accession of Zane to the suit as a coplaintiff, long after Stout had been admitted a defendant, and had resisted the claim in the name of Vause, and claimed protection as a purchaser for value, is the only ground for the implication that the suit in the name of Vause was instituted by Zane for his benefit. The propriety of an implication having so large an effect on the interest of the parties, is at least most doubtful.
On the whole, I am of opinion that the decrees in this case, so far as they subjected the sureties to contribution, and required the defendant Robinson to contribute in respect to the insolvent sureties, are right; but that the same are erroneous so far as they charged the land in the hands of the appellant (who purchased it before there was a claim asserted by a party entitled to a decree, and consequently before there was an effectual Us pen-dens) with the amount decreed to be paid by Robinson; and that the bill, as to Stout the purchaser, ought to have been dismissed.
Cabell, P.
held, not only that the proceedings created no lien upon the land in the hands of the purchaser, but also that Zane had no right to contribution. He was of opinion that the decree should be reversed and the bills dismissed in tolo. But